IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WENDOVER CITY, a Utah Municipal Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WEST WENDOVER CITY, a Nevada Municipal Corporation, JOSEPHINE THAUT, and John Does 1 through 10,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S COMMERCE CLAUSE CLAIM FOR RELIEF; GRANTING PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT ON FIFTH CLAIM FOR RELIEF; GRANTING DEFENDANTS' MOTION TO DISMISS PUNITIVE DAMAGE CLAIMS; AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S SECOND, THIRD AND FOURTH CLAIMS FOR RELIEF<br><br>Case No. 2:03-CV-523 TS |

1

This matter came before the Court on a motion hearing on December 9, 2005. At that hearing, the Court heard argument on four motions: (1) Defendants' Motion for Partial Summary Judgment on Plaintiff's Commerce Clause Claim for Relief; (2) Plaintiff's Cross Motion for Partial Summary Judgment on Fifth Claim for Relief, Interference with Commerce; (3) Defendants' Motion to Dismiss Punitive Damage Claims; and (4) Defendants' Motion for Partial Summary Judgment on Plaintiff's Second, Third, and Fourth Claims for Relief. After considering the written material and oral arguments submitted by the parties, and being otherwise fully informed, the Court makes the following ruling.

## I. FACTUAL BACKGROUND

Plaintiff Wendover, Utah had been providing water to the State Line Hotel and Casino ("State Line") for more than seventy years. In 1992, Defendant West Wendover, Nevada passed Ordinance 6-2-5 (the "Ordinance"). Ordinance 6-2-5(A) states that "[i]t shall be mandatory for the owner of all houses, buildings, or other properties used for human occupancy, employment, recreation, commercial, industrial or other like purposes situated within the City to use the City water system to the exclusion of all others . . . ." The Ordinance contained a grandfather clause which allowed owners who were on other water systems prior to the effective date of the Ordinance to remain on the other water system. The State Line was the only such user and opted to remain on Plaintiff's water system.

In 2002, ownership of the State Line changed. After this change in ownership, the State Line, now operating as the Wendover Nugget,[1] switched to Defendant West Wendover, Nevada's water system. Plaintiff argues that the State Line was forced to switch water suppliers as a result

---

[1] For convenience, the Court will refer to the casino as the State Line throughout this order.

of threats from West Wendover city officials that they might deny/revoke the State Line's liquor and business licenses if the State Line did not change water suppliers.  Defendants argue that the State Line switched its water supplier of its own volition.  Plaintiff brings this suit seeking damages for the substantial revenue it lost as a result of losing its largest water customer.

## II.  SUMMARY JUDGMENT ON THE COMMERCE CLAUSE ISSUE

The Dormant Commerce Clause is the key issue in Defendants' Motion for Partial Summary Judgment on Plaintiff's Commerce Clause Claim for Relief and Plaintiff's Cross Motion for Partial Summary Judgment on Fifth Claim for Relief, Interference with Commerce. These two motions will be discussed together.

A.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[2]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[3]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[4]

---

[2]Fed. R. Civ. P. 56(c).

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[4]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

B.      ANALYSIS

Article I, Section 8 of the U.S. Constitution gives Congress the power "[t]o regulate Commerce . . . among the several States . . . ."[5]  While this provision is generally considered "a grant of regulatory power to Congress, the Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce."[6]  To determine whether an activity violates the dormant Commerce Clause a two-step analysis is used.[7]  First, it is determined whether the government is acting as a market regulator or a market participant.[8]  Next, if the state is acting as a market regulator, it must be determined whether the government action violates the Commerce Clause.[9]

"[I]f a State is acting as a market participant, rather than as a market regulator, the dormant Commerce Clause places no limitations on its activities."[10]  The distinction between a market participant and a market regulator is not often clear.  However, the Supreme Court has stated that the market participation doctrine "'differentiates between a State's acting in its distinctive governmental capacity, and a State's acting in the more general capacity of a market participant; only the former is subject to the limitations of the Commerce Clause.'"[11]  The Court

---

[5]U.S. Const. art. I, § 8, cl. 3.

[6]*Oregon Waste Sys., Inc. v. Dept. Of Envt'l Quality*, 511 U.S. 93, 98 (1994).

[7]*Reeves, Inc. v. Stake*, 447 U.S. 429, 436–39 (1980).

[8]*Id*.

[9]*Id*.

[10]*South-Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 93 (1984).

[11]*Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 592 (1997) (quoting *New Energy Co. v. Limbach*, 486 U.S. 269, 277 (1988)).

has further stated that its market participation cases "stand for the proposition that, for purposes of analysis under the dormant Commerce Clause, a State acting in its proprietary capacity as a purchaser or seller may 'favor its own citizens over others.'"[12]

The Second Circuit has stated that where a private actor could not engage in the activity in question, the government is acting as a market regulator, rather than a market participant.[13] That court has also stated that "when the state avails itself of the unique powers or special leverage it enjoys by virtue of its status as sovereign, it is 'engaging in market regulation.'"[14]

Defendants originally argued that they were market participants and, therefore, were not subject to the dormant Commerce Clause. Defendants later abandoned this argument, however. The Court finds that as a result of their abandonment of this theory, Defendants have stipulated to the fact that they are market regulators. Even if they have not stipulated to this, the Court finds that Defendants are engaged in market regulation. Here, Defendant West Wendover, Nevada is engaging in activity in which a private actor could not. Defendant West Wendover is acting in its distinctive governmental capacity. Therefore, Ordinance 6-2-5 is subject to the dormant Commerce Clause.

When the Commerce Clause is implicated, there are two different tests which may be applied, depending on the nature of the regulation. "If a restriction on commerce is discriminatory, it is virtually *per se* invalid."[15] On the other hand, "nondiscriminatory

---

[12]*Id*. at 592–93 (quoting *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 810 (1976)).

[13]*USA Recycling Inc., v. Town of Babylon*, 66 F.3d 1272, 1282 (2d. Cir. 1995).

[14]*Village of Rockville Centre v. Town of Hempstead*, 196 F.3d 395, 399 (2d. Cir. 1999) (quoting *SSC Corp. v. Town of Smithtown*, 66 F.3d 502, 512 (2d. Cir. 1995)).

[15]*Oregon Waste Systems, Inc. v. Dept. of Envtl. Quality*, 511 U.S. 93, 98 (1994).

regulations that have only incidental effects on interstate commerce are valid unless 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'"[16]

The Court finds that this issue is governed by the Supreme Court case of *C&A Carbone, Inc. v. Town of Clarkstown*.[17] *Carbone* involved a flow control ordinance which required all nonhazardous solid waste within the town to be deposited at a single transfer station, thus preventing others from processing the waste collected in the town.[18] The Supreme Court found the flow control ordinance to be discriminatory and was similar to many laws that the Court had previously rejected.[19] The Court stated that the ordinance "squelches competition in the waste-processing service altogether, leaving no room for investment from outside."[20] The Court held that "[s]tate and local governments may not use their regulatory power to favor local enterprise by prohibiting patronage of out-of-state competitors or their facilities."[21] Accordingly, the Court stuck down the flow control ordinance.[22]

Defendants rely heavily on the Second Circuit case of *USA Recycling, Inc. v. Town of Babylon*.[23] In *Babylon*, the Second Circuit distinguished *Carbone* by stating that the town was providing garbage services as part of a governmental duty, not as a business selling to a captive

---

[16]*Id*. (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

[17]511 U.S. 383 (1994).

[18]*Id*. at 388.

[19]*Id*. at 391–92.

[20]*Id*. at 392.

[21]*Id*. at 394.

[22]*Id*. at 394–95.

[23]66 F.3d 1272.

consumer base.[24]  The court differentiated the payment of taxes in return for a municipal service from the forced business transaction that the ordinance in *Carbone* required.[25]  The Second Circuit found that it was this forced business transaction which rendered the flow control ordinance in *Carbone* invalid.[26]

The Court notes, at the outset, that *Babylon* is not binding precedent in this district. Further, the Court finds that *Babylon* is distinguishable in that West Wendover is selling water to the State Line for a set fee based on the amount of usage.  Defendant West Wendover is not providing water as a municipal service.  Rather, it is using its regulatory power to favor itself and is engaging in the type of forced business transaction that was rejected in *Carbone* and distinguished in *Babylon*.

Defendants also rely heavily on a case from the Kansas Supreme Court, *Water District No. 1 v. Mission Hills Country Club*.[27]  That case involved a state statute which granted the Water District an exclusive right to provide pressurized treated water by pipeline within its district boundaries.[28]  The defendant in that case, a country club, was within the limits of the district and received water from it.[29]  When the District raised its prices, the country club sought other means of obtaining water and sought to construct a pipeline to connect with a neighboring

---

[24]*Id*. at 1283.

[25]*Id*.

[26]*Id*.

[27]960 P.2d 239 (Kan. 1998).

[28]*Id*. at 240.

[29]*Id*. at 240–41.

city in another state.[30]  When the District heard of this, they adopted a rule reinforcing the previously enacted state law.[31]  The country club brought suit claiming that the state law violated the dormant Commerce Clause.  The Kansas Supreme Court held that the statute was not subject to the dormant Commerce Clause.[32]  They held that the District was providing water as a governmental service and that its actions were not subject to the dormant Commerce Clause.[33]

The Court notes that the *Water District* case is also not binding precedent.  Moreover, the case before the Court is again distinguishable.  In *Water District*, the state law at issue prevented any other competitors from entering the field.  As a result of that state statute, no one, other than the water district could supply water.  In the present case, however, the ordinance has the effect of not only preventing others from entering the field, but it also disrupts the existing relationship between Wendover, Utah and the State Line.  *Water District*, is distinguishable on this ground.

The Court believes that the ordinance at issue here is indistinguishable in all material respects from the one at issue in *Carbone* and that this case is governed by *Carbone*.  This is a situation where a local government is using its regulatory power to favor itself by prohibiting out-of-state competitors.  As a result, Ordinance 6-2-5 is discriminatory and is virtually *per se* invalid.  The only possible justification for the ordinance is the generation of revenue, but such a justification is insufficient.  As the Court noted in *Carbone*, "[b]y itself, of course, revenue

---

[30]*Id*. at 241.

[31]*Id*.

[32]*Id*. at 245.

[33]*Id*. at 249.

generation is not a local interest that can justify discrimination against interstate commerce."[34] As a result, the Court finds that Ordinance 6-2-5 is discriminatory and is therefore invalid under the dormant Commerce Clause, as applied here.

Even if the Court were to find that the ordinance is not discriminatory, the conclusion would be the same under the test set out in *Pike v. Bruce Church, Inc.*[35]  The Supreme Court stated in *Pike* that "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."[36] "If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."[37]  "Only if the burden on interstate commerce clearly outweighs the State's legitimate purposes does such a regulation violate the Commerce Clause."[38]

Under the *Pike* test, the Court must weigh two factors: (1) the putative local benefits; and (2) the burdens on interstate commerce.  Defendants have argued that the putative local benefit here is in providing healthy and safe water to their residents.  The difficulty with this argument is that there is no allegation that Plaintiff's water supply was somehow unhealthy or unsafe.  In

---

[34]*Carbone*, 511 U.S. at 393.

[35]397 U.S. 137.

[36]*Id*. at 142.

[37]*Id*.

[38]*Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 474 (1981).

fact, there is evidence to suggest that Defendants' water system is less reliable and contains more silica than Plaintiff's system. Defendants suggest another reason for their actions and that is a financial one. Defendants have conceded the fact that money was a motivating factor here.

The burdens imposed by the ordinance here are substantial. The ordinance has the greatest impact on Plaintiff. The evidence presented shows that Plaintiff is losing approximately $90,000 per year as a result of the switch. As a result of this loss of revenue, Plaintiff has been forced to restructure a bond obligation and may face other financial difficulties in the future. Additionally, the State Line has been impacted as a result of the switch in water suppliers. They are required to pay a higher fee and have had to replace equipment more often as a result of increased silica in Defendants' water system. Finally, the Court notes the ordinance greatly impacts interstate commerce in that it does not allow for competition from any outside source.

The burden on commerce here is great. The only valid reason that Defendants have put forward to justify this burden is an economic one. Based on this, the Court finds that the burdens placed on commerce by the ordinance outweigh the putative local benefits. Therefore, the ordinance is also unconstitutional under the *Pike* test, as applied here.

The Court will grant Plaintiff's Motion for Summary Judgment on this issue. The Court emphasizes, however, that this ruling is limited. The ordinance is unconstitutional only as applied in this case. This case represents a unique set of circumstances where neighboring cities are separated by a state line. Therefore, the impact on interstate commerce is peculiar to this case. The Court holds that Ordinance 6-2-5 is unconstitutional as applied in this case.

III. DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S PUNITIVE DAMAGES CLAIMS

Plaintiff is seeking punitive damages in relation to its second and third claims for relief. Plaintiff's second claim for relief alleges tortious interference with existing economic relations.

Plaintiff's third claim for relief is based on a theory of interference with prospective economic benefits. Both of these claims lie in tort.

A. MOTION TO DISMISS STANDARD

The standard for considering a Fed. R. Civ. P. 12(b)(6) motion is as follows:

[A]ll well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party. A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.[39]

B. CHOICE OF LAW

It must first be determined whether Utah or Nevada law applies here. Since Utah is the forum state, Utah's choice of law provisions control.[40] Utah has adopted the most significant relationship approach as set out in the Restatement (Second) of Conflicts of Law.[41] In order to apply the most significant relationship approach, the Court must first characterize the nature of the claim.[42] Plaintiff is seeking punitive damages for its second and third claims for relief. As noted, both of these claims lie in tort.

---

[39] *Sutton v. Utah State School for the Deaf and Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citations and quotation marks omitted).

[40] *Waddoups v. The Almagamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002).

[41] *Id.*

[42] *Id.*

11

Having determined that Plaintiff's claims sound in tort, the Court must next determine which state has the most significant relationship to the occurrences and the parties.[43] Section 145 of the Restatement (Second) of Conflict of Laws lists several factors to take into account in determining which law applies: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicil, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered.[44]  These factors are to be evaluated according to their relative importance with respect to the particular issue.[45]

Here, the injury to Plaintiff occurred in Utah, since Plaintiff is located in Utah.  Nevada was the place where the conduct causing the injury occurred and where the other events in this lawsuit occurred.  The last two elements are evenly balanced between Utah and Nevada.  Here, the conduct alleged by Plaintiff which gives rise to this lawsuit, including the entire decision making process, occurred in Nevada.  This factor weighs more heavily in this situation than the other factors listed above.  Further, the Court is persuaded by the fact that Nevada has expressed a policy interest in protecting its governmental employees from punitive damages and, on the other hand, the State of Utah has no discernible interest in imposing punitive damages on governmental employees of Nevada.  Therefore, the Court will apply Nevada law here.

---

[43]*Id*. at 1060.

[44]*Id*.

[45] *Id*.

C.  ANALYSIS

Under Nevada law, West Wendover City is immune from punitive damages.[46] Nevada law also prohibits punitive damage awards in actions sounding in tort against a present or former officer or employee of the state or any political subdivision.[47] Under this provision, Defendant Mayor Thaut, in her official and personal capacities, is also immune from punitive damages claims.[48] The Court would also note that this provision immunizes other city officials which Plaintiff may name, from punitive damages claims.[49] Therefore, Plaintiff's punitive damages claims contained in its second and third claims for relief are dismissed.

IV.  DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S SECOND, THIRD AND FOURTH CLAIMS FOR RELIEF

Defendants' motion seeks the dismissal of Plaintiff's second, third, and fourth claims for relief as a matter of law.

A.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[50] In considering whether

---

[46]Nev. Rev. Stat. § 41.035(1).

[47]*Id.*

[48]*Id.*

[49]In a footnote to its response memorandum, Plaintiff has stated that they now wish to identify the John Does listed in their Complaint as City Manager Chris Melville, former City Councilwoman Lore Cook Vanderbusse, City Councilwoman Viola Troyan, City Councilman Michael Gunter, former Councilman Alan Rowley, and City Councilman Mike Miera.  Plaintiff has not amended its Complaint to name these individuals, nor has it brought a motion to do so.  Therefore, at this point, these individuals are not parties to this suit.

[50]Fed. R. Civ. P. 56(c).

genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[51] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[52]

B.	PLAINTIFF'S SECOND AND THIRD CLAIMS FOR RELIEF

    1.	THE APPLICABLE LAW

As noted previously, Nevada law will be applied to Plaintiff's second and third claims for relief. Plaintiff's second claim for relief is based on a theory of tortious interference with existing economic relations. Under Nevada law, the following elements must be proven in order to establish the tort of intentional interference with contractual relations: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (4) resulting damage.[53]

Plaintiff's third claim for relief is based on a theory of intentional interference with prospective economic benefits. Under Nevada law, the following elements must be proven in order to establish the tort of interference with prospective economic advantage: (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship;

---

[51]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[52]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[53]*Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989).

(4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct.[54]

2.   ANALYSIS

Defendants make three arguments in support of their motion to dismiss these two claims as a matter of law. First, they argue that Defendants did not force the State Line to switch their water supplier. Second, they argue that their actions are immune from suit because they were in furtherance of a statute or regulation. Third, they argue that Plaintiff's second and third claims for relief should be barred by discretionary function immunity.

The Court finds that the three arguments cited by Defendants in support of their Motion are so intertwined in the factual disputes of this case that summary judgment is inappropriate. There are genuine issues of material facts as to Plaintiff's second and third claims for relief and the arguments presented by Defendants that will be left to a fact finder. Therefore, Defendants' Motion for Summary Judgment will be denied as to Plaintiff's second and third claims for relief.

C.   PLAINTIFF'S FOURTH CLAIM FOR RELIEF

Defendants also seek the dismissal of Plaintiff's fourth claim for relief, promissory estoppel. Since neither party has made a conflict of laws argument on this issue and since both Utah and Nevada law are substantially similar on this point, the Court will apply Utah law.

In Utah, promissory estoppel requires that four elements be shown: (1) the promisee acted with prudence and in reasonable reliance on a promise made by the promisor; (2) the promisor knew that the promisee had relied on the promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person; (3) the promisor

---

[54]*Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1225 (Nev. 1987).

was aware of all material facts; and (4) the promisee relied on the promise and the reliance resulted in a loss to the promisee.[55]

The key issue to the Court is whether there was a promise made by Defendants to Plaintiff. *Black's Law Dictionary* defines promise as: "The manifestation of an intention to act or refrain from acting in a specified manner that another is justified in understanding that a commitment has been made . . . ."[56] Utah law requires that a claim "show evidence of a reasonably certain and definite promise."[57] "[A] claimant's subjective understanding of the promissor's statements cannot, without more, support a promissory estoppel claim."[58]

Here, viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to present sufficient evidence of a reasonably certain and definite promise. While Plaintiff has presented evidence that Defendant Mayor Thaut told Wendover, Utah officials that West Wendover would not advocate a change in the State Line's water suppliers, these informal remarks do not rise to the level of a promise. As a result, Plaintiff has failed to present evidence of a certain and definite promise and Plaintiff's fourth claim for relief is dismissed.

---

[55] *J.R. Simplot Co. v. Sales King Int'l, Inc.*, 17 P.3d 1100, 1107 (Utah 2000).

[56] *Black's Law Dictionary* 1229 (7th ed. 1999).

[57] *J.R. Simplot*, 17 P.3d at 1107.

[58] *Nunley v. Westates Cashing Servs., Inc.*, 989 P.2d 1077, 1089 (Utah 1999).

16

## V.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Partial Summary Judgment on Plaintiff's Commerce Clause Claim for Relief (Docket No. 44) is DENIED.  It is further

ORDERED that Plaintiff's Cross Motion for Partial Summary Judgment on Fifth Claim for Relief, Interference with Commerce (Docket No. 46) is GRANTED.  It is further

ORDERED that Defendants' Motion to Dismiss Punitive Damage Claims (Docket No. 52) is GRANTED.  It is further

ORDERED that Defendants' Motion for Partial Summary Judgment on Plaintiff's Second, Third and Fourth Claims for Relief (Docket No. 57) is GRANTED IN PART and DENIED IN PART.

DATED   December 13, 2005.

BY THE COURT:

_____
TED STEWART
United States District Judge